No. 13,715.

B. D. WOODS & SONS VS. CARENCRO SUGAR MANUFACTURING COMPANY.
S. GUMBEL & CO. AND JULES JEANMARD, OPPONENTS.

### SYLLABUS.

1. The purchaser, as such, of a sugar refinery—outfit and plant—who assumes payment of claims secured by vendor's lien upon the machinery, has no greater right to contest and repudiate such claims than his vendors had.
2. If they would be bound, under the circumstances existing at the time of sale, to meet the obligation of the lien, so must he meet it.

APPEAL from the Eighteenth Judicial District, Parish of Lafayette—*DeBaillon, J.*

*Charles D. Caffery* for John H. Murphy, Third Opponent, Appellee.

*C. H. Mouton* and *Kenneth Baillio* for Jules Jeanmard, Third Opponent, Appellant.

The opinion of the court was delivered by

BLANCHARD, J.   At the suit of plaintiffs a receiver was appointed to defendant company—the latter being in insolvent or embarrassed circumstances.

S. Gumbel & Co. were mortgage creditors of the company for a large amount.

The receiver provoked a sale of all the property to pay the Gumbel debt and other debts.   At this sale Gumbel & Co. became the purchasers of the property, movable and immovable, constituting the plant of the company.

Before the sale took place John H. Murphy presented a petition to the District Court setting forth the indebtedness of the company to him in the sum of $3746.23, representing the price of certain machinery which he had sold to it, and which had been placed in the refinery and had become part of its plant.

He averred he had not been paid the amount; that promissory notes had been given him; that he had the vendor's privilege upon the machinery thus sold; that care had been taken to preserve the same; and that to protect and conserve his rights it was necessary the

machinery in which he was interested should not be sold confusedly with the mass of other property, but should be appraised separately and sold separately.

He prayed for separate appraisement and for an order to the sheriff to sell the machinery in question separately from the other property included in the order of sale, and to retain the proceeds thereof in his hands until the further order of the court.

The judge, considering that a separate sale of the machinery upon which the plaintiff claimed the vendor's privilege would impair the refinery and destroy its usefulness, refused to order its separate sale, but did order its separate appraisement and directed the sheriff to require of the purchaser a bond and surety, in an amount equal to that claimed by the petitioner, to secure payment to the latter of such sum as he might be decreed entitled to out of the proceeds of the sale.

Having sold the property under these circumstances, and otherwise gotten ready for his settlement, the receiver filed his final account of the classification and distribution of proceeds among the creditors.

He placed John H. Murphy on this account as a privilege creditor on movables sold with the plant, but separately appraised, and figuring the separate appraisement as .1156 per cent. of the appraisement of the whole, he put him down as entitled to that percentage of the proceeds, or to the sum of $2433.60.

Gumbel & Co. opposed this item of the account on various grounds and took an order of appeal from the judgment allowing the same, but have not prosecuted this appeal, and do not appear in this court by counsel or by brief. They may, therefore, be considered as eliminated from the case.

Following their purchase of the property of the company, Gumbel & Co. sold the whole outfit to Jules Jeanmard, without warranty—not even for the return of the purchase price—and the purchaser assumed payment of all valid claims supported by legal liens and privileges resting on the property.

From this it appears that the only person of interest remaining to contest the claim and lien asserted by Murphy is Jeanmard, for if the same be sustained, he must satisfy it under the assumption aforesaid.

Accordingly, Jeanmard appeared in the case and opposed the allowance of Murphy's claim and privilege as the same appeared upon the account of the receiver.

The grounds of his opposition, in brief, are:—

That nothing is due him; that the machinery he furnished the Manufacturing Company was worthless and failed to do the work required of it; that there was, thus, a breach of warranty under which same was purchased; that extensive repairs were required upon it and were made at the expense of the company; that it was only by reason of such repairs that the company were enabled to do anything with the machinery; that the separate appraisement made of the machinery prior to the receivership sale, was excessive, *ex parte*, not binding upon those interested in opposing same and was made without examination of the machinery; that there was collusion between Murphy and Von Phul, the manager of the company, to defraud the latter in the purchase of the machinery; and that the giving of the notes by the company to Murphy for the price of the machinery was a fraud upon the company and upon the minority stockholders brought about by Von Phul, who owned and controlled a majority of the stock.

This opposition of Jeanmard was not presented until after the trial of the issues joined by the oppositions filed to the receiver's account had been commenced.

Counsel for Murphy opposed its filing on the ground that it came too late and, further, that Jeanmard was without right of action or interest in the premises, and from an adverse ruling reserved a bill of exceptions.

From a judgment rejecting his opposition and sustaining the claim and lien of Murphy, Jeanmard prosecutes this appeal.

*Ruling*—It is not considered necessary to pass upon the point raised in the bill of exceptions taken by counsel of Murphy to the trial court's ruling allowing the opposition of Jeanmard to be filed.

The case is against the opponent on its merits and it were better to decide it on its merits.

The case turns upon facts. There is no question of law involved.

The machinery in question was purchased in the year 1897. It was placed in position in the refinery and used in the grinding season of that year. Payments were made upon the purchase price, but a considerable balance remaining unpaid, the president of the company, acting by authority of the Board of Directors, to cover this balance and to cover amounts due for other machinery, executed and delivered to Murphy in August 1898 three promissory notes each for $1182.15, payable, respectively, at four, five and six months from date.

The evidence shows that the main trouble with the machinery was

experienced in the first grinding season. Murphy seems to have met all the demands made upon him for repairs and replacement of parts, and, thereafter, when another grinding season was approaching, with full knowledge of all the facts, with full knowledge of the merits and demerits of the outfit, the company adjusted accounts with Murphy and liquidated his claim by giving him the notes referred to.

The machinery was used in the seasons of 1898 and 1899, and liability of the company to Murphy, on the notes he held, was repeatedly acknowledged in letters to him written by the officers of the company.

After all this it is idle to say that the company, if it had remained a going concern, could have successfully defeated Murphy's recovery of the notes, and if it could not, neither can Jeanmard, who stands before the court merely as a subsequent purchaser, and at second hand at that, of the plant and outfit of the company, with assumption of whatever liens on the property that would have been enforceable against it in the hands of the company.

He does not appear before the court in the capacity of creditor of the company, but only as having an interest to oppose Murphy's claim because of the fact that he purchased the property upon which Murphy asserts a privilege.

His case as presented by his pleadings is not made out in any of the particulars therein contained.

The judgment appealed from is found correct and the same is, accordingly, affirmed.